UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

DERRICK LEE SMITH,

                Plaintiff,               Case No. 1:13-cv-694

v.                                  Honorable Paul L. Maloney

DANIEL H. HEYNS et al.,

                Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim against all Defendants except Defendant Alford. The Court will serve the complaint against Defendant Alford.

**Discussion**

I.     Factual allegations

Plaintiff Derrick Lee Smith is a state prisoner presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF). Plaintiff complains about events that occurred while he was incarcerated at LRF and at the Michigan Reformatory (RMI). On October 29, 2008, Plaintiff was sentenced to 22 years and 6 month to 75 years, after pleading *nolo contendere* to two counts of kidnapping, MICH. COMP. LAWS § 750.349, and six counts of criminal sexual conduct, first degree, MICH. COMP. LAWS § 750.520b(1) (during the commission of a felony). Plaintiff sues the following Defendants: Director of the Michigan Department of Corrections (MDOC) Daniel Heyns; the Detroit Police Department (DPD); Northern District/9th Precinct; Lincoln Park Police Department (LPPD); LPPD Officers Jeremy Craig and Ulysses Boykin; former DPD Sgt. David Cobb; DPD Detective Ortiz; Wayne County Prosecutors Kim L. Worthy, Suzette Samuels and Elizabeth Van Marke; Judges Nancy Blount, Willie Lipscomb III and Daniel P. Ryan; complaining witnesses Tina Bommaritto and Andrea Bommaritto; witnesses Christianna Graham, Heather Green, and Tia Skinner; Wayne County Sheriff Robert Evans; Wayne County Jail; RMI Warden Carmen Palmer; RMI Deputy Warden Anthony Stewart; RMI Correctional Officer W. Alford; RMI Registered Nurses Todd Lambert, Laura Kinder and Bryan Deerden; MDOC Grievance Section Manager Richard Russell; Health Care Services at RMI and LRF; LRF Hobbycraft Director J. Dickerson; LRF Assistant Resident Unit Supervisor (ARUS) Unknown Irby; LRF Warden Mary Berghuis; LRF Classification Director Mario Vialpando; and LRF Deputy Warden J. Verbencouer.

Plaintiff's amended complaint is approximately 75 typed, single-spaced, pages without punctuation or paragraphs.  The multiple attachments filed by Plaintiff account for an additional 83 pages.  Plaintiff complains about a wide range of issues.  Specifically, Plaintiff alleges that his constitutional rights were violated in connection with the following:  (1) his arrest and the subsequent investigation into the crimes for which he was convicted; (2) the criminal proceedings and trial that resulted in his convictions; (3) an assault by Defendant Alford; (4) inadequate medical treatment of the injuries he suffered as a result of the assault; (5) the theft of personal property; (6) being forced to work an unacceptable job assignment that he was physically unfit to handle; and (7) LRF personnel failing to reclassify him for more than 90 days.

Plaintiff seeks the following relief:

> judgment against all Defendants in the amount of $10,000,000 . . . and judgment . . . against each Defendant specifically stating that they did in fact violate Plaintiff's 6th, 8th, 13th & 14th Amendment constitutionally protected rights, and [an] order [for] compensatory, punitive and monetary damages against all Defendants in their individual and official capacit[ies] and [a] declar[ation that] the Defendants are in fact responsible for the damages done to Plaintiff by their actions, and [to] allow Plaintiff to proceed to trial on the claims contained within this complaint . . .

(Docket #14-2, Page ID#241.)[1]

II.     Claims Based on Plaintiff's Criminal Conviction

**A.     Plaintiff's Claims are Barred by _Heck_**

Plaintiff sues the law enforcement personnel, prosecutors, Judges and witnesses, including the complaining witnesses, involved in his arrest, trial and conviction.  He alleges that

---

[1]Plaintiff lists an additional three pages of requested relief.  In general, Plaintiff asks the Court to find certain facts.

Defendants violated his constitutional rights by giving, using and convicting him on false and perjurious testimony.

To the extent Plaintiff seeks injunctive, declaratory and monetary relief for alleged violations of Constitutional rights, his claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (emphasis in original). In *Heck*, the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87 (footnote omitted). The holding in *Heck* has been extended to actions seeking injunctive or declaratory relief. *See Edwards*, 520 U.S. at 646-48 (declaratory relief); *Clarke v. Stalder*, 154 F.3d 186, 189-90 (5th Cir. 1998) (claim for injunctive relief intertwined with request for damages); *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401, at *1 (6th Cir. May 5, 1998) (injunctive relief). Plaintiff's allegations against these Defendants clearly call into question the validity of his convictions. Therefore, his action is barred under *Heck* until his criminal convictions have been invalidated. Consequently, the following Defendants will be dismissed: Craig, Boykin, Cobb,[2] Ortiz, Worthy, Samuels, Van Marke, Blount, Lipscomb, Ryan,

---

[2]Plaintiff indicates that former DPD Sgt. David Cobb is deceased. The Court need not consider whether he is a proper Defendant however, because Plaintiff's claims against him are barred by *Heck* in any event.

4

Tina and Andrea Bommaritto, Graham, Green, Skinner and Evans, DPD, LPPD, Northern District/9th Precinct and Wayne County Jail.[3]

**B.      Plaintiff's Claims are Barred by the Statute of Limitations**

As noted above, Plaintiff was sentenced on October 29, 2008.  Plaintiff filed the instant action on September 11, 2013, nearly five years after he was sentenced.  Plaintiff does not identify the dates on which the allegedly unlawful events that occurred in connection with his arrest, trial and conviction took place.  However, because he was sentenced in 2008, the events that Plaintiff alleges violated his Constitutional rights must have occurred prior to his sentencing.  Plaintiff does not claim that he only recently discovered the information on which he bases his Constitutional claims.

State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983.  *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985).  For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years.  *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999).  Accrual of the claim for relief, however, is a question of federal law.  *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984).  The statute of limitations begins to run

---

[3]The DPD, LPPD, Northern District/9th Precinct and Wayne County Jail are not properly named as Defendants. The jail is a building, not an entity capable of being sued in its own right.  The police departments do not exist as separate legal entities; they are simply agents of the county.  *Vine v. Cnty. of Ingham*, 884 F. Supp. 1153, 1158 (W.D. Mich. 1995) (citing *Hughson v. Cnty. of Antrim*, 707 F. Supp. 304, 306 (W.D. Mich. 1988) and *Bayer v. Almstadt*, 185 N.W.2d 40, 44 (Mich. Ct. App. 1970)).  Accordingly, the Court will dismiss the DPD, LPPD, and Northern District/9th Precinct. Even if the Court were to assume that Plaintiff intended to sue Wayne County, Wayne County may not be held vicariously liable for the actions of its employees under § 1983.  *See Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, Wayne County is liable only when its official policy or custom causes Plaintiff's injury.  *Id.*  Plaintiff does not suggest that any official policy or custom caused his injuries.  Plaintiff therefore fails to state a claim against Wayne County.

when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[4]

Plaintiff's claims based on events that occurred prior to 2008 are untimely. Plaintiff had reason to know of the "harms" done to him at or around the time they occurred. Hence, his claims accrued in 2008. However, he did not file his complaint until September, 2013, well past Michigan's three-year limit. Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* MICH. COMP. LAWS § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

A complaint "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint may be dismissed as frivolous if it is time-barred by the appropriate statute of limitations. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). The Sixth Circuit has repeatedly held that when a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, *sua sponte* dismissal of the complaint is appropriate. *See Dellis*, 257 F.3d at 511; *Beach v. Ohio*, No. 03-3187, 2003 WL 22416912, at *1 (6th Cir. Oct. 21, 2003); *Castillo v. Grogan*, No. 02-5294, 2002 WL 31780936, at *1 (6th Cir. Dec. 11, 2002); *Duff v. Yount*, No. 02-5250, 2002 WL

_____

[4]28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

31388756, at *1-2 (6th Cir. Oct. 22, 2002); *Paige v. Pandya*, No. 00-1325, 2000 WL 1828653 (6th Cir. Dec. 5, 2000). Accordingly, Plaintiff's claims based on events that occurred prior to 2008 must be dismissed as frivolous.

III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Eighth Amendment

#### 1.    Cruel and Unusual Punishment

Plaintiff alleges that on September 2, 2012, Defendant Alford closed a door on his hand multiple times causing injury to his hand, wrist and arm in violation of the Eighth Amendment. Additionally, Plaintiff alleges that Defendant Alford slammed the door on his hand because he wanted to cause Plaintiff unnecessary pain.  Finally, Plaintiff alleges that Defendant Alford's actions were not necessary to administer discipline.

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958).  The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain."  *Rhodes*, 452 U.S. at 346.  Among unnecessary and wanton infliction of pain are those that are "totally without penological justification."  *Id.*

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment.  *Rhodes*, 452 U.S. at 347.  The

Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley v. Albers*, 475 U.S. 312 (1986), should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178-79 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Wilkins*, 130 S. Ct. at 1178. In determining whether the use of force is wanton and unnecessary, a court must evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6-7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).

At this stage of the proceedings, Plaintiff states an Eighth Amendment claim against Defendant Alford.

## 2.    Inadequate Medical Treatment

Plaintiff alleges that Defendants Palmer, Stewart, Russell, Health Care Services,[5] Kinder, Lambert, and Deerden violated the Eighth Amendment prohibition against cruel and unusual punishment by providing inadequate medical care for the injury he sustained to his hand following the alleged assault by Defendant Alford. Additionally, Plaintiff alleges that despite knowing about Plaintiff's injury through the many grievances he filed, Defendants were deliberately indifferent to his medical needs.

---

[5]It is unclear if Plaintiff intends to name Health Care Services at RMI, LRF or both as Defendants to this claim. Because Plaintiff identifies Health Care Services at both institutions in his list of Defendants, the Court will assume Plaintiff meant to name both here.

As discussed above, the Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts

10

or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to

11

constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

Plaintiff attaches to his amended complaint multiple grievances and the institutional responses to those grievances.  In his Step I grievance, Plaintiff stated that he was not given proper care for his wrist injury and requested that he be seen and treated immediately.  (Docket #1-2, Page ID#81).  Defendant Lambert conducted the Step I investigation and wrote that:

> Records show that on 9/2/12, after an altercation with custody, the grievant was seen at the cellside by nursing for his wrist complaint and subsequently issued a treatment plan which included ice, analgesic and education. Fractures was not suspected at the time.  He was encouraged to send a health care request for, (HCR) if wanted to be seen further.  He did send an HCR on 9/5/12 and was scheduled for 9/10/12, however when nursing called to get him down for his appt., custody said he was on a visit.  As a result of this, he was rescheduled for 9/13/12.

(*Id.* (verbatim))  Plaintiff appealed the Step I grievance response.  Defendant Kinder conducted the Step II investigation and wrote that:

> Upon investigation of the EMR (electronic medical record), 9/02/2012 - Nurse cell side visit; States that his right hand may be broken because it was slammed in door.  State can not move and hit the center of his hand and wrist.  States very painful.  Was involved in altercation with officer at time of incident.   Went to prisoner's cell for assessment.
> Prisoner states can not bend his rt. wrist.  Tried to bend wrist but prisoner appeared to be resisting.  No swelling or ecchymosis [bruising] or redness or alteration in skin integrity found.  Compared to lt. wrist could see no difference in appearance.  Advised prisoner to kite medical if pain or problems with wrist persisted.
> 09/10/2012 - Prisoner scheduled to be seen for recheck of his wrist.  Prisoner did not show for his appt.  The housing unit was called to have prisoner sent

down to the health care for his appt.  Housing unit officer state that the prisoner was on a visit at this time.  Will reschedule appt. for another day. 09/12/2012 - Evaluation in nurse sick call; arrives to the clinic stating that his right arm and hand was slammed in the door by the officer on 9-1-12.  He states that it hurts from his arm to the tips of all of his fingers, "it hurts internally" - he points to no epicenter for his pain, but states that it hurts everywhere, and also complains of numbness down to the tips of his fingers. Previous treatment? Yes.  Saw nurse on 9-2-12, was given ice and Motrin. No visible abnormality - no swelling, redness, no breaks in the skin - when attempting range of motion, prisoner resists movement, but when he is distracted range of motion of wrist, hand and fingers is normal - cap refill less than two seconds, radial pulse strong.  Warm moist compresses to be used as needed, education provided and return to clinic as needed. 10/01/2012 - No additional Health Care Request forms submitted.

(Docket #1-2, Page ID#84 (verbatim).)  Defendant Kinder denied Plaintiff's Step II grievance,

concluding that:

> The issue presented in this grievance has been reviewed by health care staff. Prisoner shall be provided with a continuum of medically necessary health care services that are supported by evidence based medical research. Grievant was assessed and evaluated by a Qualified Health Care Professional (QHP).  A disagreement with the judgment of someone qualified and capable of making same does not support a claim of denial of care.
> Grievant encouraged to access health care through the kite process to address any current health care concerns.

(*Id.* (verbatim).)  It is clear from these documents that Plaintiff was evaluated by medical personnel

immediately following the door slamming incident, that his medical needs were assessed on multiple

occasions, that he received medical treatment based on the on-going assessment of his needs, and

that he was repeatedly instructed to return to the medical clinic as needed but did not do so between

September 12, 2012 and October 1, 2012.

Plaintiff does not deny that he was treated, rather he complains that the treatment he

received was inadequate.  Plaintiff contends that he did not receive "serious medical attention and

proper follow up care or xrays or any other medical assistance to treat" his injury.  (Docket #14-1,

Page ID#206.)  Plaintiff's allegations are insufficient to state an Eighth Amendment claim for deliberate indifference to a serious medical need.  Plaintiff's complaints were taken seriously by medical staff.  He was seen by medical professionals who documented the absence of any obvious injury to his hand, wrist or fingers that would suggest the necessity of an xray or any additional treatment.  His requests for medical attention were never ignored and he was repeatedly encouraged to seek help should the need arise.  Nevertheless, Plaintiff missed a scheduled appointment on September 10, 2012, and never sought medical attention between his September 12, 2012 appointment and the October 1, 2012 investigation of his Step II grievance.  Moreover, other than complaining that xrays were not taken, Plaintiff fails to suggest what additional medical care Defendants should have provided.

Under the circumstances present here, Plaintiff's claim that he was not given adequate medical care is insufficient to state an Eighth Amendment claim for deliberate indifference of a serious medical need.  *See Owens v. Hutchinson,* 79 Fed. Appx. 159, 161 (6th Cir. 2003) ("[a] patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim").  Consequently, he fails to state a claim against Defendants Palmer, Stewart, Russell, Health Care Services at RMI and LRF, Kinder, Lambert and Deerden.

B.    Fourteenth Amendment

1.    **Confiscation of Hobbycraft Items**

Plaintiff alleges that he purchased hobbycraft items while incarcerated at RMI at security level IV but when he was transferred to LRF at security level II his hobbycraft items were confiscated by Defendants Berghuis, Dickerson and Verbencouer.  Additionally, Plaintiff alleges

14

that Defendants confiscated his hobbycraft items based on an LRF Policy that Plaintiff claims contradicts an unidentified state-wide policy and the policy of the MDOC Directors office. Plaintiff alleges that the "theft" of his property violated his due process rights under the Fourteenth Amendment.[6]

In the Sixth Circuit, a plaintiff can state a § 1983 procedural due process claim in two ways, either by:

> (1) demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him of property pursuant to a "random and unauthorized act" and that available state remedies would not adequately compensate for the loss.

*Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991) (quoting *Collins v. Nagle*, 892 F.2d 489, 497 (6th Cir. 1989)). To the extent Plaintiff claims that his due process rights were violated by the LRF policy that forbade him from bringing into the prison certain of his hobbycraft materials, Plaintiff fails to state a claim.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). A due process violation actionable under § 1983 "is not complete when the deprivation occurs; it is not complete unless and until the State fails to

---

[6]Plaintiff also alleges that the confiscation of his hobbycraft items was a violation of his Eighth Amendment right to be free from cruel and unusual punishment. The confiscation of Plaintiff's hobbycraft items is an insufficient basis for an Eighth Amendment claim.

provide due process." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  The Due Process Clause does not guarantee that the procedure will produce a correct decision.  "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process."  *Martinez v. California*, 444 U.S. 277,  284 n.9 (1980).  "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon*, 494 U.S. at 125 (emphasis in original).  At a minimum, due process requires that "a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).  To satisfy due process,

> the "hearing . . . need not be elaborate. . . . the formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings.  In general, something less than a full evidentiary hearing is sufficient prior to adverse administrative action."

*Id.* at 545 (internal citations omitted).  Indeed, even where significant liberty interests are at stake, as in the case of parole revocation, due process is satisfied where:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Wolff v. McDonnell*, 418 U.S. 539, 559 (1974) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972).

16

The items that Plaintiff was not allowed to bring into his cell at LRF were as follows: 1 bag of balsa wood, 3 4-ounce bottles of glitter, 1 pack of stencils, 1 empty glue stick and 30 markers. Plaintiff undoubtedly had a property interest in the hobbycraft items that he legitimately purchased while incarcerated at RMI. However, Plaintiff appears to have received the process to which he was entitled. After Plaintiff was transferred to LRF, he received a Notice of Intent to Conduct an Administrative Hearing regarding "Unapproved Hobbycraft Property." (Docket #1-2, Page ID#89.) This Notice described the reason for the hearing, citing the operative policies, detailed the items that were not allowed at LRF, explained the options for disposition, including storing the property for pick up or mailing it to someone Plaintiff designated, and permitted Plaintiff to seek a hearing, which he did. (*Id.*) A hearing was held before Defendant Irby and Plaintiff was present and made a statement explaining that he did not want the items destroyed or sent away and that he wanted to be reimbursed for the confiscated items. Plaintiff also asked that his hobbycraft items be preserved pending his appeal. (Docket #1-2, Page ID#91.) Defendant Irby upheld the LRF policy and determined that Plaintiff would not be allowed to have any of the identified hobbycraft items.[7] However, Defendant Irby granted Plaintiff's request that his hobbycraft items be held pending the result of his appeal. Plaintiff appealed Defendant Irby's decision through each of the three-steps of the prison grievance process. Defendant Berghuis conducted the final review and upheld the result of the administrative hearing. (Docket #1-2, Page ID##95, 97.) In fact, Plaintiff does not object to the process he received, and he does not suggest that the decisionmakers were biased. He simply does not like the result. As previously discussed, Plaintiff does not have a constitutional guarantee of a specific result. *Zimermon*, 494 U.S. at 125.

---

[7]It is unclear whether Plaintiff brought only the identified hobbycraft items with him from RMI, or whether he brought more hobbycraft items from RMI and only the identified hobbycraft items were disallowed.

To the extent Plaintiff claims that Defendants confiscation of his property violated due process because it was unauthorized and intentional, Plaintiff's claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Where a Plaintiff's claim is premised upon unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Jul. 9, 2012). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards,

institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

Finally, to the extent Plaintiff alleges that the Defendants failed to follow state-wide prison policies regarding retention of hobbycraft items, this claim is not actionable under § 1983. Defendants alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Based on the foregoing, Plaintiff's allegations are insufficient to state a Fourteenth Amendment claim for violation of due process. Consequently, he fails to state such a claim against Defendants Dickerson, Berghuis, Verbencouer or Irby.[8]

## 2.    Work Assignment and Reclassification

---

[8]"Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Because Plaintiff's federal claims based on the confiscation of his hobbycraft items have been denied, this Court declines to exercise jurisdiction over any claims Plaintiff might have under state law.

Plaintiff alleges that Defendants Berghuis, Vialpando and Verbencouer violated his Fourteenth Amendment due process rights[9] when they forced him to work in food service after his hand was injured in the alleged assault by Defendant Alford and because he was disabled due to an injury sustained while he was in the U.S. Army from 1990-1991.[10] Additionally, Plaintiff complains that after he was caught stealing a five pound block of cheese, he was terminated from the food service job and placed on "00" cell restriction pending reclassification.[11] Plaintiff alleges that Defendant Vialpando never reclassified him and he remained on "00" cell restriction from February 11, 2013 to June 1, 2013 without ever being reclassified or given a classification hearing.

As noted above, "[t]he Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429

---

[9]Plaintiff also claims that his work assignment violated his rights under the Thirteenth Amendment and the Eighth Amendment. The Thirteenth Amendment expressly exempts prisoners from its reach. *See* U.S. CONST. amend. XIII, § 1 (stating "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."); *Ray v. Mabry*, 556 F.2d 881, 882 (8th Cir. 1977) (holding that "[c]ompelling prison inmates to work does not contravene the Thirteenth Amendment."). In addition, Plaintiff fails to state an Eighth Amendment claim because neither Plaintiff's job assignment nor the time it took to reclassify Plaintiff rise to the level of cruel and unusual punishment.

[10]Plaintiff notes only that his disability was detailed in his presentence investigation report. (Docket #14-1, Page ID#207.) There is no indication that Plaintiff's disability was recognized at anytime while he has been incarcerated and his prison record does not contain a Special Accommodation Notice. (docket #1-2, Page ID#68.)

[11]Plaintiff was given a major misconduct ticket as a result of the theft. Plaintiff was subsequently placed on unemployable status "due to his documented disruptive behavior ([t]heft [m]isconduct) while on assignment." (Docket #1-2, Page ID#64.)

(6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Because Plaintiff has no right to prison employment, he was not entitled to select a particular job or to avoid being assigned a job he did not wish to do.

In addition, Plaintiff cannot state a due process claim based on his "00" cell restriction or Defendant Vialpando's failure to reclassify him or give him a classification hearing.[12] MDOC Policy Directive (PD) 05.01.100, colloquially referred to as "00," sets forth the procedures for prisoner program classification. It states that "[a] prisoner may be reclassified . . . [when] the prisoner has been terminated from an assignment." PD 05.01.100(I)(5). Additionally, it states that "[a] prisoner may be reclassified as unemployable and therefore ineligible for a work assignment . . . [when] [t]he prisoner has a documented history of disruptive behavior on a work . . . assignment." *Id.* at (X)(5). The "00" cell restriction to which Plaintiff refers, comes from Section

---

[12]Plaintiff filed a grievance regarding his work assignment and Defendant Vialpando's failure to reclassify him. Plaintiff completed each of the three steps of the grievance process. Plaintiff's grievance was denied at each step and ultimately denied by Defendant Berghuis.

Z which provides that "[u]nemployable prisoners shall not be permitted to participate in any more leisure time activities than those who work full time." *Id.* at (Z).  Thus, during working hours, unemployable prisoners are confined to their cells.  Finally, it requires that "[u]nemployable prisoners . . . be considered for reclassification every 30 calendar days until returned to work." *Id.* at (AA).

Because Plaintiff has no Constitutionally protected liberty interest in his prison employment, MDOC Policy 05.01.100 provides the only basis upon which he can claim any interest in prison employment or the consequences he suffered upon being terminated from his prison job. However, as discussed above, Defendants alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation.  *Laney v. Farley*, 501 F.3d 577, 581 n. 2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *Spruytte v. Walters*, 753 F.2d 498, 508-09 (6th Cir. 1985); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (finding that failure to follow a policy directive does not rise to the level of a constitutional violation because a policy directive does not create a protectable liberty interest).  Federal courts may not order state officials to comply with their own law.  *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Additionally, Plaintiff does not enjoy any federally protected liberty or property interest in state procedure.  *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994).

Moreover, the Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner.  *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).  In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the

Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that confinement to administrative segregation, which is considerably more restrictive than unemployable status or cell restriction, does not present an "atypical and significant hardship" implicating a protected liberty interest. *Sandin*, 515 U.S. at 486; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005). Likewise, the Sixth Circuit has held that a prisoner's confinement to his cell on weekdays while other prisoners work or attend school does not constitute an "atypical or significant hardship." *See Ingram v. Harry*, 97 F. App'x 20, 21 (6th Cir. 2004). Accordingly, the conditions of confinement of a prisoner on unemployable status or "00" cell restriction are not atypical or significant and, thus, fail to raise a due process claim. Plaintiff therefore fails to state a due process claim against Defendants Berghuis, Vialpando and Verbencouer.

C.   <u>Supervisory Liability</u>

Plaintiff fails to make specific factual allegations against Defendants Heyns other than alleging that he was responsible for the actions of MDOC employees or failed to stop his subordinates from engaging in allegedly unconstitutional conduct. A plaintiff bringing an action pursuant to § 1983 cannot premise liability upon a theory of respondeat superior or vicarious liability. *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d

23

810, 818 (6th Cir. 1996) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

As the Sixth Circuit has repeatedly emphasized:

> Section 1983 liability will not be imposed solely upon the basis of respondeat superior.  There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *accord Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).  Liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon "a mere failure to act." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendants Heyns engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim against him.

IV.     Motions

In addition to his amended complaint, Plaintiff has filed several motions.  First, Plaintiff filed a "Motion to Proceed to Pretrial Proceedings, Preliminary Hearings, Discovery, Jury Selection and Trial on Claims Filed by Plaintiff for Civil Rights Violations Contained Within Criminal Trial and Civil Rights Complaint Filed Within the Federal Court on Defendant Listed Within the Complaint" (First Motion).  (Docket #13.)  It is not clear why Plaintiff believes such a

motion is necessary. To the extent Plaintiff state a viable claim for relief, the progress of this case is governed by the Court's Standard Case Management Order in Prisoner Civil Rights Cases. Accordingly, Plaintiff's First Motion (docket #13) will be DENIED.

Next, Plaintiff filed a "Motion Asking this Court to Enter an Order to Allow Plaintiff the Opportunity to Have this Court Proceed on Claim That Come Within the Jurisdiction of the Western District and to Have the Claims That Come under Eastern Jurisdiction to Be Settled in the Eastern District by Having the Case Transferred to the Eastern District Prior to this Court Entering a Final Decision Saying the Case Is Dismissed for Lack of Jurisdiction Based upon the Claims Being Filed Properly" (Second Motion). (Docket # 14-2.) This Motion refers to Plaintiff's claim regarding his arrest, trial and conviction, all of which occurred within the boundaries of the Eastern District of Michigan. Because the claims Plaintiff should have brought in the Eastern District are barred by the operative statute of limitations and/or *Heck*, they will be dismissed for failure to state a claim. Accordingly, Plaintiff's Second Motion (docket #14-2) will be DENIED.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Craig, Boykin, Cobb, Ortiz, Worthy, Samuels, Van Marke, Blount, Lipscomb, Ryan, Tina Bommaritto, Andrea Bommaritto, Graham, Green, Skinner, Evans, Wayne County Jail, DPD, Northern District/9th Precinct, LPPD, Palmer, Stewart, Russell, RMI Health Care Services, LRF Health Care Services, Kinder, Lambert, and Deerden, Dickerson, Irby, Berghuis, Vialpando, Verbencouer and Heyns will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendant Alford.

25

An Order consistent with this Opinion will be entered.


Dated:   __October 16, 2013__                       __/s/ Paul L. Maloney_____
                                                    Paul L. Maloney
                                                    Chief United States District Judge